**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DYSHELLE HARRIS, | : | Civil Action No.: 11-6004 (FLW) |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | |
| | : | R E C E I V E D |
| BRISTOL-MYERS SQUIBB COMPANY, | : | |
| *et al.*, | : | APR 1 2 2012 |
| Defendants. | : | |
| | : | AT 8:30_____M |
| | | WILLIAM T. WALSH |
| | | CLERK |

**WOLFSON, District Judge**:

Plaintiffs[1] here initiated individual actions[2] in state court, alleging, *inter alia*, physical and mental injuries due to their exposure to an environmentally contaminated site owned by Bristol-Myers Squibb Company ("BMS" or "Defendant") in New Brunswick, New Jersey.  Numerous similar earlier cases have been filed in state court, and in 2008, the cases were designated as a mass tort litigation by the New Jersey Supreme Court for centralized case management.  In October 2011, Defendant timely removed to federal court the fifty cases most recently filed in state court related to the mass tort litigation – the cases before this Court.  Subsequently, Plaintiffs filed a motion

---

[1]    Plaintiffs are fifty current/former residents of the City of New Brunswick, New Jersey, who initiated separate cases against Defendant Bristol-Myers Squibb.  For the sake of brevity, the Court will not list each of the individual plaintiffs in this Opinion.

[2]    The Magistrate Judge consolidated these fifty cases against defendant Bristol-Myers Squibb for purposes of discovery and case management. *See* Consolidation Order dated November 1, 2011.  Pursuant to the Consolidation Order, if a filing is made in Civ. Action No.11-6004 (FLW), it is deemed filed in all the related cases.

to remand. To justify remand, Plaintiffs assert that (1) this Court does not have subject matter jurisdiction because of a lack of complete diversity or based upon the forum home defendant rule; and (2) Defendant has waived its right to remove. Alternatively, Plaintiffs submit that this Court should abstain from hearing these cases under the *Colorado River* doctrine. For the reasons explained below, the Court denies Plaintiffs' motion in its entirety.

## BACKGROUND

The Bristol-Myers Squibb New Brunswick Site ("Squibb Site") is an approximately 100-acre area located on the border of the City of New Brunswick and the township of North Brunswick in Middlesex County, New Jersey. Schrama's Decl. at Ex. A at p. 1. Since 1905, E.R. Squibb & Sons, Inc. had operated pharmaceutical research, development and manufacturing facilities at the Squibb Site, but in 1989, it merged with Bristol-Myers Corporation ("BMC");[3] BMC changed its name to BMS, and E.R. Squibb & Sons, Inc. became a subsidiary of BMS. *See* Kelly's Cert. at ¶ 3. On April 30, 2000, BMS converted E.R. Squibb & Sons, Inc. to a limited liability company under the laws of the State of Delaware, and BMS became the sole member of E.R. Squibb & Sons, L.L.C. ("Squibb"). *Id.* at ¶¶ 4-5. Since then, BMS has operated the facilities on the Squibb Site. *Id.* at ¶ 7.

---

[3]     Defendant asserts that BMC had at all times kept its headquarters at 345 Park Avenue, New York, New York. After the merger, BMS continued to operate its headquarters in New York.

In May 2008, individuals began filing tort-based environmental lawsuits against BMS, Squibb[4] and BMC in state court.  Schrama's Decl. at Ex. D at p. 1.  These complaints allege that current and previous residents, in close proximity to the Squibb Site, had been, and some continue to be, exposed to toxic and hazardous substances that allegedly emanated from the Squibb Site.  *Id.* at Ex. C at ¶¶ 16-22.  By inhaling or direct contact with contaminated water and/or soil, these plaintiffs allege, *inter alia*, that they suffered, and continue to suffer, severe physical injuries, emotional/economic distress and property damages during different periods of time.  *Id.* at ¶ 23.  These plaintiffs are all represented by the law firm of Garrity, Graham, Murphy, Garofalo & Flinn, P.C. and the law firm of Stark & Stark.

As the number of filings increased, counsel for plaintiffs in state court filed an application for mass tort designation with the New Jersey Supreme Court in September 2008, to facilitate the process for filing and managing these environmental tort cases.  *See* Schrama's Decl. at Ex. D.  After having reviewed the application, over the objection of Defendant, the New Jersey Supreme Court granted the cases mass tort status and assigned the 106 already-filed cases as well as all future cases to the Honorable Carol E. Higbee, Judge of the Superior Court, Law Division, Atlantic County.  *See* Schrama's Decl. at Ex. F.

At the first case management conference held before Judge Higbee in November 2008, BMS questioned the status of the two other defendants, BMC and Squibb, which entities Plaintiff had failed to serve.  *See* Schrama's Decl. at Ex. G at TR 42-23 to 44-18

---

[4]    Plaintiffs initially named E.R. Squibb & Sons, Inc. as one of the defendants in state court.  However, when those complaints were filed in state court, E.R. Squibb & Sons existed as a limited liability company.

(transcript of November 2008, Case Management Conference).  As a result of that lack of service of process, Judge Higbee noted that these two defendants should be dismissed for lack of prosecution.  *Id.* at TR 44:10-13.  Based on the discussion, plaintiffs' counsel filed stipulations of dismissal without prejudice as to defendants BMC and Squibb, and BMS accordingly stipulated that it would be responsible for any judgment that might be entered in these related cases.  *See* Schrama's Decl. at Ex. H at p. 1.  Since the first case management conference, over 150 new cases have been added to the state mass tort litigation, and more cases are expected to be filed.  Currently, pursuant to 13 Case Management Orders,[5] the parties are engaged in discovery.

On October 13, 2011, Defendant filed and served timely notices to remove each of the last fifty cases filed in state court to the federal court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.  *See* Rooney's Cert. at ¶ 6.  The cases were assigned to me.  In response, Plaintiffs move to remand, contending that (1) there is no diversity jurisdiction because Defendant's principal place of business is located in New Jersey, wherein most of the plaintiffs reside, or alternatively, Defendant cannot remove based upon the forum home defendant rule;[6] and (2) Defendant waived its right to remove cases by agreement and by its conduct.  Plaintiffs further argue that this Court should abstain from hearing the removed cases under the *Colorado River* doctrine.

---

[5]     At the time of removal, there were 11 Case Management Orders in place.  *See* http://www.judiciary.state.nj.us/mass-tort/bristol-myers_squibb/index.htm.

[6]     A small number of Plaintiffs do not currently reside in New Jersey; as such, Plaintiffs claim that the forum home defendant rule prevents Defendant from removing those cases to federal court.  Irrespective of whether diversity exists in every Plaintiff's case or whether the forum home defendant rule applies, the same single issue is before the Court: where Defendant is located for jurisdictional purposes.  In that connection, there is no dispute that Defendant is incorporated in Delaware.  Thus, the issue here is the location of Defendant's principal place of business.

On March 26, 2012, the parties appeared before the Court for a motion hearing.

Having heard the parties' arguments, the Court ruled on the record that Defendant has

carried its burden of demonstrating that its removal is proper.[7]  In that respect, Defendant

has provided sufficient evidence, by way of its Assistant General Counsel's certification,

to establish that its principal place of business, its headquarters or nerve center, is indeed

located in New York, New York.[8]  *See Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).  As

---

[7]  Under 28 U.S.C. § 1441(a), a state-court action that could have been properly
filed in federal court may be removed, by a defendant, to federal court. *See Caterpillar,
Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. §1441).  Federal jurisdiction
may be based upon federal question or diversity grounds.  28 U.S.C. §1331 (federal
question); 28 U.S.C. §1332 (diversity).  In the case of the latter, each party must be of
diverse citizenship from each other, and the amount in controversy must exceed $75,000.
*See* 28 U.S.C. § 1332(a); *see also Grand Union Superm. Of the Virgin Isl., Inc. v. H.E.
Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003).  Whether addressing federal
question or diversity, "[r]emoval statutes are to be strictly construed against removal, and
all doubts are to be resolved in favor of remand." *Lopienski v. Centocor, Inc.*, No. 07-
4519, 2008 U.S. Dist. LEXIS 49099 *5 (D.N.J. Jun. 25, 2008) (citing *Shamrock Oil and
Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941)); *Brown v. Francis*, 75 F.3d 860, 865 (3d
Cir. 1996).  "It is … settled in th[e Third Circuit] that the party asserting federal
jurisdiction in a removal case bears the burden of showing, at all stages of the litigation,
that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d
188, 193 (3d Cir. 2007) (citing *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d
392, 396 (3d Cir. 2004)).

[8]  To briefly reiterate the Court's finding on the record: first, Defendant has kept its
headquarters at 345 Park Avenue, New York, NY 10154 ("345 Park Avenue") at all
times since the 1989 merger. *See* Kelly's Cert. at ¶ 8.  This address is listed on all of its
regulatory filings with the Securities and Exchange Commission as well as on
Defendant's website (www.bms.com) as its headquarters. *Id.*  Second, Defendant's Chief
Executive Officer ("CEO") keeps his primary office at 345 Park Avenue. *Id.* at ¶ 9.  As
CEO, his job encompasses directing, controlling and coordinating BMS's activities.
Furthermore, several other members of BMS's senior leadership keep their primary
offices at the same address, including General Counsel and Senior Vice President for
Strategy, Alliances and Transactions. *Id.* at ¶¶ 12-13.  Third, Defendant's Board of
Directors holds its periodic meetings at 345 Park Avenue, in which it oversees and makes
decisions regarding the company's management and the overall performance. *Id.* at ¶ 10.
BMS's four standing committees also hold their regular in-person meetings at 345 Park
Avenue. *Id.* at ¶ 11.  Finally, BMS maintains its corporate books and records at its

a result, because Defendant is domiciled in Delaware and New York, the Court found that diversity exists between Defendant and Plaintiffs in these cases, and that the forum home defendant rule does not apply.[9]  *See* Hearing TR dated March 26, 2012 at pp. 41-44. The Court will not repeat its findings and analysis on this issue here.  In addition, the Court summarily rejected Plaintiff's contentions that Defendant waived its right to remove either by agreement or conduct.  *Id.* at pp. 11-12.  This Opinion sets forth the Court's reasoning on those findings, and it will also address the applicability of the *Colorado River* doctrine.

### DISCUSSION

A.     **Waiver by Agreement**

Plaintiffs argue that the parties entered into an oral enforceable agreement during the state court proceedings, whereby Plaintiffs agreed to dismiss their claims against the non-diverse defendants, *i.e.*, BMS and Squibb, and refrain from bringing direct claims against them, leaving BMS as the only named defendant.  In return, Defendant would assume all liability for Plaintiffs' claims to the extent proven, and according to Plaintiffs, Defendant would refrain from removing any *current* or *future* mass tort related cases filed in state court to the United States district court.  *Id.*  In essence, Plaintiffs contend that Defendant contractually waived its right to remove.

---

headquarters.  *Id.* at ¶ 17.  Based upon these facts, it is clear that Defendant's headquarters in located in New York, New York.  *See* Hearing TR at p. 43.

[9]     Plaintiffs further contend that the numerous non-diverse fictitious Defendants destroy complete diversity.  However, in determining whether a case is removable on the basis of the diversity jurisdiction, "the citizenship of defendants sued under fictitious names shall be disregarded."  28 U.S.C. §1441(b)(1).  Therefore, the presence of fictitious defendants has no bearing on this Court's jurisdictional analysis.

A federal court sitting in diversity must apply the substantive law of the forum state, here, New Jersey, in deciding questions of the existence and enforcement of contracts. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Clark v. Modern Group*, 9 F.3d 321, 326 (3d Cir. 1993). Contractual waiver of federal jurisdiction is determined in the same manner as all preliminary contractual questions. *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1218 n.15 (3d Cir. 1991). In New Jersey, the basic elements of a contract are offer, acceptance, and consideration. *See Contl. Bank of Pa. v. Barclay Riding Acad., Inc.*, 93 N.J. 153, 170 (1983). A contract "arises from offer and acceptance, and must be sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty." *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992) (internal quotations omitted) (quoting *West Caldwell v. Caldwell*, 26 N.J. 9, 24-25 (1958)). In that regard, "New Jersey ... will enforce an oral ... argument provided that it has the basic contract formation elements of offer and acceptance of sufficiently definite essential terms, or in other words, mutual assent to the same terms (a 'meeting of the minds')." *LNT Merch. Co. v. Dyson, Inc.* No. 08-2883, 2009 U.S. Dist. LEXIS 62308, *6 (D.N.J. July 21, 2009) (citing *Excelsior Ins. Co. v. Pennsbury Pain Ctr.*, 975 F. Supp. 342, 348-49 (D.N.J. 1996); *Pascarella v. Bruck*, 190 N.J. Super. 118, 124-25 (App. Div. 1983)).

Here, Plaintiffs' assertion that an oral agreement exists arises from a case management conference held before Judge Higbee on November 7, 2008, as well as a phone conversation between the parties' counsel on January 9, 2009. The Court will address each instance separately.

Plaintiffs point to a specific colloquy BMS' prior counsel had with Judge Higbee and plaintiffs' counsel during the conference as evidence that Defendant agreed, by way of a binding oral agreement, not to remove any related state court cases. Having reviewed the relevant portions of that court proceeding, the Court does not find that defense counsel discussed removal at all, let alone provided any oral assurance that would amount to a binding contract. At that particular conference, counsel for BMS questioned the status of the other defendants, BMC and Squibb:

> [Counsel for BMS] MR. TANENBAUM: When Plaintiffs filed this lawsuit, they filed against Bristol Myers Squibb, Bristol Myers Company and E.R. Squibb and Sons. Bristol Myers Squibb Company is the right defendant. The other two have never been served. I know in Middlesex County they had issued – I'm not sure – dismissal for want of prosecution or whatever the right document is. I just wondered if Plaintiffs can voluntarily dismiss those other two defendants or what their plan is –
>
> [Counsel for Plaintiffs] MR. FLINN: Bristol Myers Squibb and Company is –
>
> MR. TANENBAUM: Bristol Myers Squibb and Company –
>
> THE COURT: Is the owner of the property.
>
> MR. TANENBAUM: – would have liability for this – I mean has responsibility. It is the entity that merged from Bristol Myers Company and Squibb. So it is the surviving entity. It operates the plant.
>
> MR. FLINN: And you stipulate to that?
>
> MR. TANENBAUM: That they be responsible for the liability – of any liability?
>
> MR. FLINN: If there is.
>
> MR. TANENBAUM: Yes. We're not going to claim that Bristol Myers Company or E.R. Squibb –
>
> THE COURT: That you have the wrong company.

MR. TANENBAUM: Right.   We will not have the wrong company defense.

MR. FLINN: That's not just a shell.

MR. TANENBAUM: No, it is not a shell.  You can check that out.

MR. FLINN: In that event, I'll amend the caption.

MR. TANENBAUM: Okay.  The John Does, obviously, can stay.  Just a voluntarily dismissal.

THE COURT: They have already been dismissed because you didn't serve those particular entities, so they have already been dismissed for lack of prosecution.

MR. TANENBAUM: I don't think – I think the mass tort designation came in before that would have happened, so if we can do a volunteer dismissal we'll do a form, whatever.

THE COURT: Send an order in.

*See* Schrama's Decl. at Ex. G (transcript of November 2008, Case Management Conference) at TR 42-25 to TR 44-18.  As a result of Judge Higbee's discussion of this issue, Plaintiffs filed a voluntary dismissal of BMC and Squibb. *See* Schrama's Decl. at Ex. H (Voluntary Stipulation of Dismissal).

Under these circumstances, nothing defense counsel stated during the conference can be construed as an oral agreement relating to the non-removal of state cases.  The dialogue at issue only addressed how the state court would proceed, procedurally, with the mass tort litigation.  Mr. Tanenbaum, prior counsel for BMS, explained to Judge Higbee that BMS is the only entity that emerged from the merger of BMC and Squibb. In addition, because these defendants were not served, the court was persuaded that these two entities were not proper defendants in the state court litigation.  Subsequently, the court directed counsel to submit an order, voluntarily dismissing the two defendants.

9

Clearly, contrary to Plaintiffs' contention, BMS' counsel did not make any offer to plaintiffs in a contractual sense with respect to removal. Rather, defense counsel merely stipulated that BMS would assume all liability in the case, if any. To be clear, the dialogue, between the parties and the court, was nothing more than a discussion of the status of BMC and Squibb in the mass tort cases. Therefore, nothing said by either party at the Conference could have given rise to a legally enforceable agreement regarding removal.

Next, Plaintiffs reference a telephone conversation between counsel wherein, Plaintiffs argue, defense counsel had agreed not to remove *current* and *future* mass tort cases to federal court. On January 8, 2009, Defendant's prior counsel,[10] Mr. Keale of Sedgwick LLP, asked Plaintiffs' counsel, Mr. Flinn, if he would be amenable to remove all of the cases filed in state court to federal court under the mistaken belief that the dismissal of BMC and Squibb created diversity.[11] *See* Keale's Cert. ¶ 3. However, Mr. Flinn refused, and informed Mr. Keale that Plaintiffs would have not "consented" to dismiss BMC and Squibb if diversity were created by the dismissal. *Id.* at ¶ 4. As a result, Plaintiffs maintain that Mr. Keale agreed on the phone not to remove the cases to federal court.[12] It is important to note that the federal actions before this Court were filed

---

[10]     Defendant is currently represented by the law firm of Lowenstein Sandler.

[11]     Defendant concedes that its prior counsel believed erroneously that the dismissal of BMC and Squibb created diversity jurisdiction. However, Defendant further points out that regardless of counsel's belief, complete diversity had existed despite dismissal of the two entities, because these two entities were also New York residents for the purposes of the jurisdictional analysis.

[12]     According to Mr. Keale, he "assured Mr. Flinn that it was not [BMS'] intent to trick him into dismissing E.R. Squibb in order to create diversity. [Mr. Keale] later told Mr. Flinn that, in light of his reaction, it was not [BMS'] intention to remove these cases

in state court more than two years after counsel's telephone conversation.   Indeed, Defendant did not remove any of the cases filed prior to the telephone conversation, and as such, to the extent there is any agreement between the parties, the Court focuses on whether defense counsel agreed, during the telephone conversation, not to remove any *future* cases.

To constitute a valid agreement "there must be a meeting of minds upon every feature and element of such agreement." *Fire Ins. Ass'n v. Wickham*, 141 U.S. 564, 579 (1891). Such an agreement must be reached by the parties as expressed, not one secret or undisclosed. *Leitner v. Braen*, 51 N.J. Super. 31, 38 (App. Div. 1958). "Where there is a misunderstanding between the parties pertaining to one of the material terms of an agreement, there is no meeting of the minds." *Pacific Alliance Group, Ltd. v. Pure Energy Corp.*, No. 02-4216, 2006 U.S. Dist. LEXIS 2246 at *3 (D.N.J. Jan. 23, 2006) (citing *Richardson v. Union Carbide Industrial Gases, Inc.*, 347 N.J. Super. 524, 533 (App. Div. 2002)).

Here, Mr. Flinn's position that defense counsel agreed not to remove any future cases is baseless. Based on uncontroverted evidence, Mr. Keale contacted Mr. Flinn to determine if Plaintiffs were willing to consent to a BMS petition to remove. Although a petition to remove can only involve cases already pending in state court, Mr. Flinn misinterpreted Mr. Keale's acknowledgment – albeit erroneous – that but for Plaintiffs' "consent" to dismiss BMC and Squibb, Defendant would not have been able to remove the pending cases.   Instead, Mr. Flinn apparently believed that Mr. Keale's

---

to federal court." Keale's Cert. ¶ 5. Mr. Keale further certified that he "did not enter into any agreement on [BMS'] behalf not to remove the Complaints to federal court nor did [he] waive [BMS'] rights in this regard." *Id.*

acknowledgement also extended to any future cases which might be filed in state court. In support of that interpretation, Plaintiffs merely point to Defendant's knowledge that there would be more cases filed in state court by Mr. Flinn, and relying on such knowledge, Plaintiffs argue that Mr. Keale's discussion of removal must have also referred to future cases. However, there is no indication on this record that Mr. Keale intended not to remove future cases during the phone conversation, nor did he so communicate such an intention to Plaintiffs' counsel. Indeed, there is no dispute that Mr. Keale and Mr. Flinn did not expressly discuss the procedural posture of any future cases that might be filed in state court. In fact, Mr. Keale, himself, certifies that there was no agreement of any kind as to future or pending state court cases. *See* Keale's Cert. ¶ 5. Thus, this Court concludes that there was no meeting of the minds between the parties, and therefore no enforceable agreement by which Defendant waived its right to remove any future filed cases. *See Big M, Inc. v. Dryden Advisory Group*, No. 08-3567, 2009 U.S. Dist. LEXIS 55423 at *67 (D.N.J. Jun. 30, 2009) (finding no meeting of the minds where the parties did not attach the same meaning to a contract term).

**C.    Waiver by Estoppel**

Alternatively, Plaintiffs argue that Defendant must be estopped from removing cases to federal court under the doctrine of equitable estoppel. Equitable estoppel is a remedy designed to prevent injustice where one party relies to its detriment on the statements of another. *See Scarano*, 203 F.2d at 512-13. To state a claim for equitable estoppel, a plaintiff must establish (1) that the defendant made a misrepresentation or concealment of fact; (2) that such misrepresentation or concealment of material fact was done with the intention or expectation that it would be acted upon by the plaintiff; and (3)

that the plaintiff reasonably and justifiably relied upon the misrepresentation or concealment to its detriment. *Eileen T. Quigley, Inc. v. Miller Family Farms, Inc.*, 266 N.J. Super. 283, 296 (App. Div. 1993).

Here, Plaintiffs believe that when Defendant promised in early 2009 not to remove cases to federal court, Defendant made a misrepresentation that it would not remove any *future* filed state court cases.    Claiming to reasonably rely on such misrepresentation, Plaintiffs contend that they dismissed BMC and Squibb. However, the Court has already found that defense counsel did not make any promise or misrepresentation not to remove *future* yet unfiled cases. Indeed, in the first instance, defense counsel merely discussed, at a court proceeding, the dismissal of BMC and Squibb due to improper service. There was no mention of future-filed cases by any party; in fact, there was no mention of removal of cases.    Thus, there was no representation upon which Plaintiffs' counsel could have reasonably relied in agreeing to dismiss these two – also diverse – unserved defendants. Likewise, this Court has further found that, on the telephone, defense counsel did not make *any* representations relating to the removal of future-filed cases. As such, without any misrepresentation, equitable estoppel cannot be invoked.[14]

---

[14]    Plaintiffs also argue that the doctrine of judicial estoppel applies to this case. Judicial estoppel is an equitable doctrine which precludes a party from asserting a position in a legal proceeding that contradicts or is inconsistent with a previously asserted position. *See Error! Main Document Only.Macfarlan v. Ivy Hill SNF, LLC*, No. 11-2307, 2012 U.S. App. LEXIS 6362, at *11 (3d Cir. Mar. 29, 2012); *Delgrosso v. Spang and Co.*, 903 F.2d 234, 241 (3d Cir. 1990). A court may apply the doctrine in a situation where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953). However, the inconsistent assertion must have been adopted by the court in the prior action, or at least successfully maintained in that action. *AFN, Inc. v. Schlott, Inc.*, 798 F. Supp. 219, 224-25 (D.N.J. 1992).    In this case,

**D.     Waiver by Conduct**

Plaintiffs further claim that Defendant waived its right to remove these newly filed cases because it has been defending the mass tort litigation in state court since 2008. The Court disagrees.  The Third Circuit has articulated that the right to remove conferred by 28 U.S.C. §§ 1441, 1446 is an absolute right that is not lost unless the defendant's intent to waive that right is "clear and unequivocal." *See, e.g., Foster*, 933 F.2d at 1218 n.15; *Selvaggi v. Prudential Prop. & Cas. Ins. Co.*, 871 F. Supp. 815, 817 (E.D. Pa. 1995) (citing cases holding that defendant may lose the right to remove by attempting to secure final judgment in state court); *Mancari v. AC & S Co., Inc., et al.*, 683 F. Supp. 91, 94 (D. Del. 1988); *Bryfogle v. Carvel Corp.*, 666 F. Supp. 730, 733 (E.D. Pa. 1987).  A defendant "may waive the right to remove to federal court where, after it is apparent that the case is removable, the defendant takes actions in state court that manifest his or her intent to have the matter adjudicated there, and to abandon his or her right to a federal forum." *Acosta v. Direct Merchs. Bank*, 207 F. Supp. 2d 1129, 1131-1132 (S.D. Cal. 2002) (internal quotations omitted) (quoting *Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994)).

Turning to the case at hand, this Court finds that Defendant has taken no action that would constitute a clear and unequivocal waiver of its right to remove.  While Defendant has been litigating cases against Plaintiff's counsel in state court since 2008, those cases are not the subject of the instant removal.  Rather, Defendant has taken no action in state court with respect to the fifty cases removed to this Court.  This point is significant because jurisdictional waivers by litigation conduct only apply where the

---

Defendant's alleged promise was not adopted by any court, nor successfully maintained in any legal proceeding.  Therefore, judicial estoppel is not applicable.

party seeking removal has, clearly and unequivocally, taken actions in the *same* case that manifest its intent to have the matter adjudicated in a specific forum. *See McKnight v. Ill. Cent. R.R.,* 967 F. Supp. 182, 186 (E.D. La 1997); *Cavadi v. Bank of Am., N.A.,* No. 07-244, 2007 WL 3226166, at *2 (D.N.H. Oct. 30, 2007); *Butar v. Hamilton Sundstrand Corp.,* No. 09-3437, 2009 WL 2972373, at *4 (N.D. Ill. Sept. 11, 2009); *Pittman v. Mem'l Herman Healthcare,* 124 F. Supp. 2d 446, 449 (S.D. Tex. 2009); *Weiner v. Soreson,* 341 F. Supp. 397, 399 (E.D. Wis. 1972); *Baker v. Firestone Tire & Rubber Co.,* 537 F. Supp. 244, 247 (S.D. Fla. 1982).

Indeed, while all the state court cases are managed under the mass tort designation, those cases are not consolidated, and each case retains its own docket number. *See* Rooney's Cert. at Ex. B (Case Management Order No. 1, dated Oct. 17, 2008). In fact, the purpose of the mass tort designation is to centralize the management of numerous cases, which share factual and legal issues; however, that designation is not a procedural mechanism to treat the collective cases as one. *See* N.J. Court Rule 4:38A. Thus, since these individual cases are separate and distinct, Defendant's conduct in the earlier-filed cases cannot be imputed to these later-filed cases for the purpose of determining waiver. To do so would significantly impair Defendant's right to remove *in futuro*. Accordingly, the Court does not find that Defendant has waived its right to remove by conduct.

E.    ***Colorado River* Abstention**

Finally, Plaintiffs argue that this Court should abstain from hearing these cases pursuant to the *Colorado River* doctrine. The Supreme Court has recognized that there are certain extremely limited circumstances in which a federal court may defer to pending

state court proceedings based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800, 817 (1976). In determining whether it should abstain, a federal court may consider a number of factors: (1) whether the state court assumed in rem jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether state or federal law provides the rule of decision; and (6) whether the state court would adequately protect the rights at issue. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983); *see also IFC Interconsult, AG v. Safeguard Intern. Partners, LLC*, 438 F.3d 298 (3d Cir. 2006).

Importantly, *Colorado River* abstention applies only in clear and exceptional cases, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16. In addition, a party seeking abstention bears the burden of showing that abstention is the appropriate course. *See Animal Sci. Prods., Inc. v. China Nat. Metals & Minerals Imp. & Exp. Corp.*, 702 F. Supp. 2d 320, 334 (D.N.J. 2010); *Sheerbonnet v. American Express Bank, Ltd.*, 17 F.3d 46, 49 (2d Cir. 1994) (given "the virtually unflagging obligation of the federal courts" to exercise jurisdiction where warranted, a party seeking abstention faces a heavy burden).

As a threshold matter, any inquiry into whether such exceptional circumstances exist sufficient to warrant abstention must be preceded by a determination that the concurrent state and federal actions are parallel. *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997); *see Bryant v. N.J. Dept. of Transp.*, 1 F. Supp. 2d 426, 437 (D.N.J. 1998)

16

("[t]he existence of a parallel state court action is a threshold issue which must be decided in any *Colorado River* abstention case because, if no parallel state court action exists, the district court lacks the power to abstain."). In general, cases are parallel when they involve the same parties and claims. *See Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield, Inc.*, 49 F. Supp. 2d 709, 718 (D.N.J. 1999).

Defendant first contends that the state actions are not parallel with this proceeding because the parties in the state and federal cases are different: none of the plaintiffs in the federal actions is a plaintiff in state court, and Defendant is the only party in common. Defendant reasons that because a common defendant alone is not sufficient to establish "parallel" litigation, the "same parties" requirement cannot be met in this case.

However, contrary to Defendant's position, the case law does not take such a limited view. As Plaintiffs correctly point out, the parties need not be completely identical for state and federal cases to be considered parallel; rather, parallel litigation is normally found when the identity of the parties and claims are *substantially similar*. *See, e.g., Hartford Life Ins. Co. v. Rosenfeld*, No. 05-5542, 2007 U.S. Dist. LEXIS 55819, *14-15 (D.N.J. Aug. 1, 2007); *Scottsdale Ins. Co. v. Detco Industries, Inc.*, 426 F.3d 994 (8th Cir. 2005); *AAR Intern., Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510 (7th Cir. 2001); *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225 (4th Cir. 2000); *Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165 (3d Cir. 1999); *Fox v. Maulding*, 16 F.3d 1079 (10th Cir. 1994); *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285 (7th Cir. 1988). In fact, the Third Circuit has never required the parties to be identical in order for *Colorado River* abstention to apply. *IFC Interconsult*, 438 F.3d at 306 ("We have never required complete identity of parties for abstention."); *see, e.g., Trent*, 33 F.3d

at 224; *Hartford Life*, 2007 U.S. Dist. LEXIS 55819, at *16-17 ("a holding that the addition of defendants in the federal suit eliminates the parallel nature of the cases would permit a federal plaintiff to avoid the doctrine of *Colorado River* by the simple expedient of naming additional parties"). The collective import of the case law is that the focus of whether the parties are substantially similar in both federal and state cases should be placed upon the similarities between the parties and their respective litigation interests. *See AAR Intern*, 250 F.3d at 518; *Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700-01 (7th Cir. 1992) (where different parties in state federal actions shared a common interest in a fee dispute, parties were "substantially similar").

Here, at first blush, it would appear that plaintiffs, current/former residents of the City of New Brunswick, in both state and federal cases, share similar litigation interests because each plaintiff alleges that he/she suffered certain damages stemming from direct/indirect exposure to contaminants emanating from the Squibb Site. However, upon a closer inspection, the question of "parallelism" in these cases turns heavily on whether the *claims* and *facts* asserted in each individual case, both in state and federal court, are substantially similar.

In that regard, Plaintiffs first argue that mass tort cases should be treated like class actions for abstention purposes, and that similar class actions brought in state and federal courts at the same time have been found to be parallel. Plaintiffs reason that the requirements for class certification under Fed. R. Civ. 23(a) – numerosity, commonality, typicality and adequacy – are similarly reflected in the elements that are considered by the New Jersey Supreme Court in determining whether to grant mass tort designation to a defined group of cases. Furthermore, Plaintiffs point out that Congress has treated mass

tort actions and class actions indistinguishably for removal determinations under the Class Action Fairness Act ("CAFA").  While CAFA is not applicable in this matter due to local controversy exceptions, *see* 28 U.S.C. §§1332(d)(4)(B), 1332(d)(11)(B)(ii)(I), Plaintiffs contend that class actions and mass tort actions share sufficient attributes necessitating similar treatment.  *Id.*  The Court disagrees.

For example, contrary to Plaintiffs' contention, the New Jersey Mass Tort Resource Book[15] expressly differentiates between mass tort designation and class action:

> There is often great confusion regarding the term "mass tort" on the one hand and "class action" on the other, to the extent that the terms are commonly misused interchangeably.  Mass torts are governed by R. 4:38A and are subject to a different procedure for their designation, as previously discussed.  Class actions are governed by R. 4:32.  In a typical R. 4:32 situation, a complaint may be filed on behalf of a small number of named parties alleging an injury and asserting a putative class action on behalf of themselves and similarly situated others whose identities are yet unknown. In a mass tort scenario, by contrast, separate complaints are brought by separate, allegedly injured parties and those matters if designated as a mass tort by the Supreme Court, will be coordinated and handled by a single judge, as also previously discussed.  Although arguably containing many similar attributes, mass torts and class actions are different.  This is not to say, however, that a portion of a large mass tort may not present a class action.  For example, in the initial diet drug mass tort, the court certified a class action on behalf of asymptomatic users of diet drugs who required medical monitoring.

New Jersey Mass Tort (Non-Asbestos) Resource Book (November 2007) at p. 2.

---

[15]    The Court takes judicial notice that this Resource Book, available online the website http://www.judiciary.state.nj.us/mass-tort, is intended to provide procedural and operational guidance to New Jersey judges and Judiciary staff in the management of cases.  The Book is prepared by the designated mass tort judges and the Civil Practice Division of the Administrative Office of the Courts and has been reviewed and endorsed by the Conference of Civil Presiding Judges.  It is intended to embody Judiciary policies adopted by the New Jersey Supreme Court, the Judicial Council, and the Administrative Director of the Courts.  While the content of the Resource Book is not binding upon this Court, it provides an important insight into New Jersey's management of mass tort cases.

Indeed, in a class action, all of the class members' claims would be adjudicated in a common trial – which may create parallel litigation when duplicative class actions are filed in state and federal courts. However, here, at this point, there have been no findings that a common trial is appropriate; in fact, the mass tort state judge may return the individual cases to their original county courts for trial.[16] Recognizing the potential differences between each individual mass tort case, New Jersey contemplates that these types of cases will be filed in both state and federal courts simultaneously: "Because many cases involving the same mass tort may be filed in several state and federal jurisdiction . . . New Jersey mass tort judges have found coordination with the designated MDL (federal) judge to be an effective means of avoiding duplication of efforts, coordinating discovery, conserving resources and facilitating global settlements."[17] Resource Book at p. 13.

Finding Plaintiffs' analogy of a mass tort action to a class action inapt, the Court holds that these two types of cases are dissimilar for abstention purposes. However, this

---

[16]    Once designated as a Mass Tort, the state court has full discretion in determining which type of trial is most appropriate for the subject and how to proceed with it (*i.e.*, whether to have a unitary trial, or to bifurcate liability and damages, etc.). Resource Book at p. 23. When the court determines that degree of injury and the amount of damages are the primary issues in dispute, as in this case, the court generally bifurcates the trials, starting with damages and then dealing with the liability. *Id.* In addition, because of large numbers of plaintiffs, the state court may take several approaches to achieve greater efficiency and expedition in the resolution of the cases (*i.e.*, consolidating trials with all or most plaintiffs on common issues only, reserving the individual issues for individual or smaller consolidated trials). *Id.*

[17]    In fact, the Court takes judicial notice that claims have been brought in federal court as multidistrict litigations when their state-court counterparts have received a mass tort designation in New Jersey. For example: (1) the latex glove, Rezulin, and PPA product liability litigation; (2) Vioxx litigation; (3) Accutane litigation; (4) Bextra/Celebrex litigation; (5) Fosamax litigation; and (6) Levaquin litigation. *See* Def. Supplemental Brief at pp. 7-8.

is not to say that there may not be substantially similar issues or claims present in particular federal and state court actions that would compel abstention.   But those findings are subject to a case-by-case analysis.   Indeed, the basis for abstention in this case requires the Court to inquire about the underlying facts of, and claims asserted in, the state court actions and whether the resolution of the those state court claims or issues would have a preclusive effect in federal court.   *See McMurray v. De Vink*, 27 Fed. Appx. 88, 91 (3d Cir. 2002); *Moses H. Cone*, 460 U.S. at 10.   The Court turns to that analysis.

As an initial matter, the Court reiterates that in order for cases to be considered parallel in this context, the state and federal actions must involve "substantially identical claims, raising 'nearly identical allegations and issues.'"   *IFC Interconsult*, 438 F.3d at 306; *Yang v. Tsui*, 416 F.3d 199, 205 (3d Cir. 2005).   Raising those concerns, Defendant argues that plaintiffs in both actions assert different claims, injuries and theories of causation.   In support of its position, Defendant emphasizes the following facts: the various plaintiffs lived in the vicinity of the Squibb Site during different periods of time and for varying lengths of time; plaintiffs claim widely disparate types of illnesses; and Defendant produced different products through different processes over time and thus, the alleged release of contaminants differed and, necessarily, the individual plaintiff's exposures differed.   Based on these facts, Defendant reasons that the causation and damage inquires are unique in each case, and therefore, the cases do not involve the same issues.

In response, Plaintiffs contend that because all of the cases are based on the Mass Tort Master Complaint, the claims are essentially identical.   In addition, Plaintiffs point out that the Master Complaint includes two natural resource damage claims -- Public

21

Nuisance and Violation of the Spill Act. Because these types of claim are generally filed on behalf of the state and general public, Plaintiffs maintain that the mass tort litigation is not simply a collection of individual tort cases. In addition, given that there is a state court order that has a preclusive effect on future cases, Plaintiffs insist that this Court must treat the state and federal court actions "essentially identical" for abstention purposes.

To begin, the Court compares the Mass Tort Master Complaint in the state action with the Complaint filed here. While plaintiffs assert similar claims in both complaints, the factual background for each individual plaintiff varies. There is no dispute that Plaintiffs were allegedly exposed to different toxic or hazardous chemicals, for different amounts of time, in different ways, and over different periods. These factual variances may translate into significant legal differences. Indeed, differences in amount and type of exposure and the nexus between exposure and injury may lead to disparate applications of causation and the types of damages available to each plaintiff. Simply stated, the inquiry of whether BMS contaminants were the proximate cause of a plaintiff's injury is fact specific, and it may differ greatly from case to case. In that regard, the resolution of the state court cases would not necessarily affect the outcome of the federal actions because each case is based on different set of facts. *See University of Maryland v. Peat Marwick Main & Co.*, 923 F.2d 265, 276 (3d Cir. 1991) ("the lack of identity of all issues necessarily precludes *Colorado River* abstention.").

Likewise, contrary to Plaintiff's contention, the resolution of the public nuisance claim is also fact specific.[18]  To recover personal damages under the public nuisance doctrine in New Jersey, a private plaintiff must allege the special injury sustained by the plaintiff, which must be above and beyond the public injury.  *See In re Lead Paint Litigation*, 191 N.J. 405, 434-35 (2007); *Mayor & Council of Alpine v. Brewster*, 7 N.J. 42, 52 (1951).  Based on this requirement, in order to prevail, each plaintiff would have to show a unique injury, aside from the general public injury arising out of the nuisance.  As such, the success of this claim would necessarily depend upon different sets of facts amongst each plaintiff.  Based upon the above analysis, the Court finds that the state and federal actions are not parallel.

In sum, because the state and federal actions are not parallel, it is unnecessary to analyze whether abstention is warranted under the factors set forth in *Colorado River*.[19]

---

[18]     The Court need not address the Spill Act as none of the federal complaints alleges a violation of that Act.

[19]     As a final note, the Court recognizes that Judge Higbee made an adverse ruling against Defendant with respect to its motion to dismiss certain individual state court actions based upon statute of limitations. Without delving into details of that decision, Judge Higbee, essentially, ruled that the discovery rule as applied in the state court tort cases is fact intensive.  Defendant seeks to dismiss the cases here on a similarly brought motion.  Pointing to the state court's adverse decision, Plaintiffs, here, argue that this Court should discourage Defendant from forum shopping by abstaining from hearing these cases.  While forum shopping may be a consideration under the *Colorado River* doctrine, *see BIL Mgmt. Corp. v. N.J. Econ. Dev. Auth.*, 310 Fed. Appx. 490, 492 (3d Cir. 2008), that factor, however, is not part of the analysis of whether state and federal actions are parallel.  However, the Court is mindful that Defendant waited three years before deciding to remove any newly filed cases to federal court; whatever tactical advantage Defendant seeks to gain in this forum, certain decisions, e.g., discovery matters, with respect to these cases are not necessarily written upon a clean slate as the Court may coordinate with the mass tort state judge in order to avoid "duplication of efforts" and coordinate discovery to conserve resources and facilitate global settlements.  *See* Resource Book at p. 13.

Accordingly, given the Court's unflagging obligation to exercise its jurisdiction, I conclude that this is not a clear and exceptional case whereby abstention is proper.

**F.      Attorneys Fees and Costs**

Plaintiffs seek reasonable counsel fees and costs resulting from Defendant's allegedly wrongful removal.  However, since the Court finds that the removal was proper, Plaintiffs' request is denied.

**CONCLUSION**

For the foregoing reasons, the Court denies Plaintiffs' motion to remand.

DATE:  April 12, 2012                                  /s/      Freda L. Wolfson
                                                                        Freda L. Wolfson, U.S.D.J.