UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DYSHELLE HARRIS, | : | Civil Action No.  11-6004 (FLW) |
| | : | (consolidated) |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| BRISTOL-MYERS SQUIBB COMPANY, et al. | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

This matter comes before the Court on Plaintiffs' Motion for Leave to file a Fourth Amended Master Complaint. Defendant Bristol-Meyers Squibb Company ("Defendant" or "BMS") has opposed Plaintiffs' Motion on futility grounds. The Court heard oral argument on September 5, 2013. For the reasons discussed below, Plaintiffs' Motion is **GRANTED**, in part, and **DENIED**, in part.

I.    INTRODUCTION

These consolidated actions involve several hundred Plaintiffs who lived and worked for extended periods of time in the neighborhoods bordering a BMS pharmaceutical plant. Plaintiffs are seeking leave to amend their Master Complaint to include additional information obtained during the course of ongoing discovery.   In connection with their Motion, Plaintiffs have submitted a proposed Fourth Amended Master Complaint ("FAMC").

A.    **Procedural and Factual History**

In May 2008, Plaintiff's counsel filed more than a hundred identical complaints in New Jersey state court against BMS alleging exposure to harmful chemicals from BMS's New Brunswick plant. In October 2008, the Supreme Court of New Jersey issued an Order granting mass tort status and assigning the cases to Hon. Carol E. Higbee, J.S.C.

Plaintiffs also filed their original Master Complaint in May 2008.  The First Amended Master Complaint, which added an Environmental Rights Act claim, was filed in August 2008. The Second Amended Master Complaint was filed in August 2009, pursuant to BMS's stipulation regarding the elimination of all captioned BMS name variations.   The Third Amended Master Complaint ("TAMC"), which removed certain Spill Act claims, was filed in November 2009. Currently, there are approximately 195 personal injury cases, along with roughly 105 separate medical monitoring cases, pending in the Superior Court.

In October 2011, BMS began removing newly-filed cases to the United States District Court for the District of New Jersey.  To date, 154 complaints have been removed, and are currently pending as consolidated actions for discovery purposes before this Court. The complaints in the removed actions adopt and incorporate by reference the TAMC.

### B.   <u>State Court Decisions</u>

Counts 11 (Misrepresentation), 12 (Conspiracy and Fraudulent Concealment), and 13 (Fraudulent Concealment of Evidence) of the TAMC were dismissed without prejudice by the Superior Court on December 30, 2009 for failure to plead fraud with particularity.

On the issue of whether the Wrongful Death Act's statute of limitations can be tolled by the discovery rule, the Superior Court held that the Supreme Court of New Jersey "may be inclined" to apply discovery rule for tolling purposes. <u>In re Bristol–Myers Squibb Env. Contamination Litig.</u>, No. 281, slip op. at 6 (N.J.Super. Ct. Law Div. Jan. 28, 2009). The Superior Court, therefore, refused to dismiss the wrongful death claims without first affording the state Plaintiffs an opportunity to take discovery to explore their equitable defenses to the statute of limitations bar.

### C.   <u>District Court Actions</u>

In April 2012, BMS began filing motions to dismiss as untimely the New Jersey Wrongful Death Act, N.J.S.A. 2A:31−1 et seq. ("WDA") claims that were brought on behalf of 24 claimants more than two years after their deaths.  Plaintiffs opposed these motions, arguing they were entitled to equitable tolling of the two-year statute of limitations under the doctrine of fraudulent concealment.  Plaintiffs' theory of concealment was based upon the allegation that, because BMS was aware that certain contaminants were being discharged at its plant, it should have disclosed that information to the public. According to Plaintiffs, failure to disclose that information was fraudulent and to Plaintiffs' detriment.

On February 15, 2013, U.S. District Judge Freda L. Wolfson  dismissed Plaintiffs' WDA claims without prejudice because Plaintiffs had not sufficiently pled the elements of the equitable defense of fraudulent concealment to warrant its application.  <u>Fuqua v. Bristol-Meyers Squibb Co.</u>,--F.Supp.2d--, 2013 WL 781615, at *7 (D.N.J. 2013) (Wolfson, J.).  Specifically, Judge Wolfson noted that Plaintiffs did not plead "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into [their] fraud allegation[s]." <u>Id.</u> Judge Wolfson also found that the TAMC did little more than assert generalized facts, rather than allege facts specific to each plaintiff at issue, as it must under Rule 9(b).  <u>Id.</u> (citing <u>Rolo v. City Investing Co. Liquidating Trust</u>, 155 F.3d 644, 658-59 (3d Cir. 1998)).

Furthermore, Plaintiffs failed "to aver what actions they took to discover that information" and "neglect[ed] to assert any facts regarding their due diligence in ascertaining the cause of death of the respective decedents as it relates to BMS's concealment of contamination." <u>Id.</u> at *9. Importantly, Judge Wolfson admonished Plaintiffs that "those allegations should be specific to each Plaintiff's conduct, and not be pled in a generalized manner."  <u>Id.</u>

In light of these deficiencies, Judge Wolfson gave Plaintiffs the opportunity to replead their fraudulent concealment allegations. Plaintiffs now submit this Motion for leave to amend their pleadings in an attempt to revive their WDA claims.  BMS opposes the Motion on futility grounds.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) governs amendments to pleadings. Rule 15 provides that "leave shall be freely given when justice so requires." However, leave to amend is not automatic. The Third Circuit has recognized that a request for leave to amend may be denied when the proposed amendment is futile. See Arab Africa Int'l Bank v. Epstein, 10 F. 3d 168, 175 (3d Cir. 1993) (denying leave to amend when RICO claim was time-barred); see also Garvin v. City of Philadelphia, 354 F. 3d 215, 222 (3d Cir. 2003) (affirming the District Court's denial of plaintiff's motion to amend when plaintiff's amended complaint would not have survived a motion to dismiss in light of the statute of limitations).

An amendment will be considered futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 468 (D.N.J.1990) (citations omitted). In determining whether an amendment is insufficient on its face, the Court employs the same standard as in a Rule 12(b)(6) motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted).

Under a typical Rule 12(b)(6) analysis, the question is not whether the movant will ultimately prevail, and detailed factual allegations are not necessary. Antoine v. KPMG Corp., 2010 WL 147928, at *6 (D.N.J. Jan. 6, 2010). If a proposed amendment is not clearly futile, then denial of leave to amend is improper. Meadows v. Hudson County Bd. of Elections, 2006 WL 2482956, at *3 (D.N.J. Aug. 24, 2006). Generally, then, "a Court is not concerned with the

question of whether the amended complaint would be barred by the Statute of Limitations unless this fact appears clearly from the record." Alfieri v. Willys Motors Inc., 35 F.R.D. 194, 195 (E.D. Pa. 1964). Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

Determination of whether a Complaint survives a motion to dismiss requires a two-part analysis. Folwer v. UMPC Shadyside, 578 F.3d 203, 210 (3d. Cir. 2009). First, factual and legal elements of the complaint must be separated. Folwer, 578 F.3d at 210. All well-pleaded facts must be accepted as true, but legal conclusions may be disregarded. Id. at 210–11. Second, the Court must determine whether the plaintiff's complaint articulates "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This context-specific task requires the "reviewing court to draw on its judicial experience and common sense." Id. at 679.[1]

The Court may consider only a very limited record when evaluating whether a proposed amended complaint is futile. When evaluating an objection based upon futility, the Court may only consider the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the claims are based on those documents. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1992).

---

[1] As further discussed below, in cases of fraud or mistake, Rule 9(b) imposes a heightened pleading standard. E.g., Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

### III.    DISCUSSION

#### A.    Equitable Tolling and Fraudulent Concealment

This is Plaintiffs' second attempt to plead sufficient facts which would support their equitable tolling defense.   After this Court dismissed their first attempt without prejudice, Plaintiffs have timely moved to amend their Master Complaint.   Critically, however, Plaintiffs were instructed that their amendments must adhere to the requirements set forth in that Opinion. Fuqua, 2013 WL 781615, at *10.  Plaintiffs have again fallen short of the specificity obligations imposed by Rule 9(b), as well as Judge Wolfson's previous directives.

#### 1.    Pleading Requirements

"The doctrine of fraudulent concealment works to toll the limitations period set forth by statute 'when a plaintiff's cause of action has been obscured by the defendant's conduct.'" In re Aspartame Antitrust Litig., 416 F. App'x 208, 211 (3d Cir. 2011) (citation omitted).

While New Jersey courts are not explicit as to the elements a plaintiff must plead in order to invoke equitable tolling under a theory of fraudulent concealment, the Third Circuit has enunciated the following factors: "(1) fraudulent concealment; (2) failure on the part of the plaintiff to discover his cause of action notwithstanding such concealment; and (3) that such failure to discover occurred [notwithstanding] the exercise of due care on the part of the plaintiff." Fuqua, 2013 WL 781615, at *8 (citing In re Aspartame Antitrust Litig., 416 F. App'x 208, 211 (3d Cir. 2011)). These factors must be pled with particularity pursuant to Rule 9(b). Kontonotas v. Hygrosol Pharm. Corp., 424 Fed. Appx. 184, 187 (3d Cir. 2011).

## 2.     The First Factor: Fraudulent Concealment

As to the first factor—BMS's alleged fraudulent concealment[2]—Plaintiffs' allegations are not sufficient to meet the strictures of Rule 9(b).  In order for Plaintiffs to adequately plead a fraudulent act under Rule 9(b), they must allege "the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" Frederico, 507 F.3d at 200. To satisfy this standard, Plaintiffs must plead, inter alia, "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id; see also  In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 276–77 (3d Cir.2006) (Under Rule 9(b), a plaintiff must, at a minimum, support his/her allegations of fraud with all the essential factual background that would accompany "'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue" (citations omitted)). Moreover, a complaint must do more than assert generalized facts, it must allege facts specific to the plaintiff. Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658–59 (3d Cir.1998) (when the complaint failed to allege "what actually happened to either" of the plaintiffs, the complaint did not plead "fraud with the specificity required by Rule 9(b)").

The Court previously highlighted which missing facts caused Plaintiffs' TAMC to be deficient under Rule 9(b).  Judge Wolfson explained:

---

[2] New Jersey courts have defined the tort of fraudulent concealment as:

> (1) that defendants had a legal obligation to disclose the evidence to plaintiff; (2) that the evidence was material to plaintiff's case; (3) that plaintiff could not have readily learned of the concealed information without defendants disclosing it; (4) that defendants intentionally failed to disclose the evidence to plaintiff; and (5) that plaintiff was harmed by the [sic] relying on the nondisclosure.

Allis-Chalmers Corp. Prod. Liab. Trust v. Liberty Mut. Ins. Co., 305 N.J. Super. 550, 556 (App. Div. 1997) (citation omitted).

> Other than assertions that Defendant fraudulently and improperly withheld certain information regarding contaminants, Plaintiffs did not allege, for instance, (1) when did the alleged concealment or destruction of evidence take place; (2) other than some general information regarding contaminants, what particular information was concealed or destroyed by Defendant; (3) how did Defendant carry out its fraudulent conduct; and (4) how did the alleged concealment affect each particular plaintiff. These missing allegations are important because they provide specificity and inject precision to Plaintiffs' theory of concealment. Without them, Plaintiffs' averment of fraud is only supported by conclusory, generalized facts, which are prohibited by Rule 9(b).

Fuqua, 2013 WL 781615, at *9.

Though Plaintiffs now provide more information on the contaminants and what particular information was concealed or destroyed, see FAMC at ¶¶ 44-45, 200-204, Plaintiffs still fail to allege the specifics of the concealment to which they refer.  Plaintiffs also provide more detail as to how BMS carried out the alleged fraudulent conduct.  For instance, Plaintiffs cite "Q&A's" that BMS developed to address the contamination "in the event a neighbor asked a question in regards to the contaminants and the potential effects of it", which left out any mention of inhalation exposures and dermal exposures. Id. at ¶ 202-204. Most notably, however, Plaintiffs do not demonstrate how the alleged concealment affected each particular Plaintiff.   In fact, Plaintiffs admit as much in their Reply Brief:

> Plaintiffs have not pled individualized specific causes of action of common law fraud or misrepresentation in the FAMC.

Plaintiff's Reply Br. at 8. A review of the FAMC confirms Plaintiffs' admission. See, e.g., FAMC. at ¶¶ 231, 195-196, 182. These allegations continue to be vague, generalized statements that do not address any Plaintiff specifically, nor any of the particular Plaintiffs' medical conditions. As a result, Plaintiffs have not cured the deficiencies in the FAMC according to Judge Wolfson's instructions.

### 3.    The Remaining Factors: Plaintiffs' Due Diligence

Plaintiffs have also not properly pled the remaining factors of their equitable defense. Judge Wolfson directed Plaintiffs to assert facts regarding their due diligence in ascertaining the cause of death of the respective decedents as it related to BMS's alleged concealment of the contamination.  Fuqua, 2013 WL 781615, at *9. Judge Wolfson also instructed Plaintiffs that those allegations must be specific to each Plaintiff's conduct. Id.

As in the TAMC, Plaintiffs again argue that BMS should have disclosed the discharge of contaminants at the Site to the public, and that not doing so was fraudulent and to Plaintiffs' detriment. Plaintiffs' FAMC adds the following:

> 217.    BMS has, at all times, had a legal obligation to disclose to officials and agencies, to the public in general and to the Plaintiffs in particular the true extent of contamination at and emanating from the Site in connection with agency action, in connection with probable future litigation and in order to facilitate medical monitoring.  BMS failed and refused to disclose the true extent of contamination at and emanating from the Site.  The public in general and Plaintiffs in particular were the intended beneficiaries of the laws and regulations applied and enforced by the aforesaid authorities and agencies, empowered to investigate and empowered to remediate or order to be remediated, the material facts concerning the nature, extent, magnitude and effects of the contamination at and emanating from the Site, and intended thereby to defraud the said officials and agencies, the public in general and the Plaintiffs in particular.

> * * *

> 219.    Since the beginning of toxic contamination at and emanating from the Site, BMS has had actual knowledge that that contamination presented a significant risk of harm to the health of the public in general, the neighborhood and the Plaintiffs in particular. Notwithstanding this knowledge and in disregard thereof, BMS misstated, withheld and concealed and continues to misstate, withhold and conceal material information from said agencies, authorities, the public and Plaintiffs concerning the nature, extent, magnitude, and effects of the exposure and contamination at and emanating from the Site. Neither the said officials and agencies, the public in general or the Plaintiffs in particular could have reasonably obtained access to this information form any other source.

> * * *

234.   BMS's past and continued misrepresentations and knowing omissions caused Plaintiffs to hesitate or fail to: seek treatment of their actual or potential medical conditions; take steps to protect themselves from harm to their health, property and loved ones; know of their injuries in connection with BMS acts and omissions; or properly protect their rights under the law.

FAMC at ¶217, 219, 234.

Plaintiffs' generalized allegations still fail to aver what actions any *specific* Plaintiffs took to discover the alleged concealed information regarding contamination. They also do not identify how any *specific* Plaintiff exercised due diligence to discover the existence of fraud notwithstanding BMS's alleged wrongdoing.

For their part, Plaintiffs identify formal meetings that BMS had with "its neighbors and neighborhood groups" where the aforementioned prepared answers and talking points would have been utilized. FAMC at ¶ 200.  The FAMC does not, however, identify which, if any, of the Plaintiffs attended those meetings and what was actually said during them.  It may be unclear whether BMS actually fraudulently concealed or misrepresented the effects or extent of the contamination using these pre-prepared answers.  More to the point, however, it is certainly unclear whether any of the Plaintiffs relied upon BMS's alleged misrepresentations.  In fact, Plaintiffs have not pled any facts which show that any of the Plaintiffs exercised due diligence in ascertaining the cause of death and how it related to the alleged concealment on the part of BMS.

### 4.      Conclusion

In sum, Plaintiffs have not satisfied their obligations under Rule 9(b) as Judge Wolfson outlined in <u>Fuqua</u>.   Plaintiffs have not pled sufficient facts to sustain their fraudulent concealment/equitable tolling claims as defenses to the application of the statute of limitations against their WDA claims.  Therefore, Plaintiffs' application for leave to amend their pleadings to include such claims is **DENIED** as futile.

B.    **CERCLA**

In their Reply, Plaintiffs raise a new argument, which was not presented in their initial moving papers. Plaintiffs assert that the limitations period associated with New Jersey's WDA is preempted and controlled by the federal limitations provision of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"). Pl.'s Reply Br. at 4. Indeed, the FAMC alleges:

> 238. All of Plaintiffs' claims have been filed within the controlling time limits and tolling provisions of CERCLA provision 42 U.S.C. §9658, in consideration of when Plaintiffs knew or reasonably should have known that their injuries were caused or contributed to by the BMS Site contaminants.

BMS does not dispute that CERCLA has preemptive effect on claims that are within its intended scope[3]; rather, it contends that the FAMC does not plead facts which plausibly suggest CERCLA's application in this case.

1.    **In General**

Section 9658 of 42 U.S.C. provides:

> (a) State statutes of limitations for hazardous substance cases
>
>> (1) Exception to State statutes
>>
>> In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.
>>
>> (2) State law generally applicable

---

[3] For reasons discussed below, the Court concludes that the FRCD provides a more generous limitations period than is available under the WDA.

> Except as provided in paragraph (1), the statute of limitations established under State law shall apply in all actions brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility.

42 U.S.C § 9658(a)(1)-(2).

As can be seen, in cases to which § 9658 applies, the state statute of limitations will generally remain in force. There is, however, an exception to this general rule. State law is preempted when the federally required commencement date ("FRCD") provides a more generous accrual date than would otherwise be available under state law. "Thus, if a state statute of limitations provides that the period in which an action may be brought begins to run prior to a plaintiff's knowledge of his injury, § 9658 preempts the state law and allows the period to run from the time of the plaintiff's actual or constructive knowledge." Waldburger v. CTS Corp., 723 F.3d 434 (4th Cir. 2013). In cases where the exception applies, "CERCLA does not create a federal statute of limitations." O'Connor v. Boeing N. Am., Inc., 311 F.3d 1139, 1143 (9th Cir. 2002). "Rather, it retains the state statute of limitations, and establishes a federal standard that governs when delayed discovery of a plaintiff's claims will toll the statute of limitations." Id. at 1143-44.

### 2.    Preemption and Applicability of Section 9658

In order to invoke § 9658, Plaintiffs must plead sufficient facts to show: (1) state law personal injury or property damage claims; (2) caused by exposure to hazardous substances, pollutant or contaminant; (3) released; (4) into the environment; (5) from a facility; and (6) a state statute of limitations period earlier than the FRCD. 42 U.S.C. 9658(a)(1).

Here, BMS maintains that: (1) New Jersey wrongful death claims are not claims for "personal injury" within the meaning of § 9658; and (2) Plaintiffs fail to allege the elements necessary to support an underlying CERCLA action (i.e., a "release" from a "facility").

### a.   *Wrongful Death and Personal Injury*

First, BMS argues that WDA claims are not contemplated by the plain language of § 9658(a)(1), which applies to claims "brought under State law for personal injury, or property damages." According to BMS, wrongful death claims are separate and distinct from, not simply a subcategory of, personal injury claims. Def.'s Supp. Br. at 4 (citing Lee v. CSX Transp., Inc., 958 So. 2d 578, 583 (Fla. Dist. Ct. App. 2007)). Thus, BMS maintains, if "Congress meant § 9658 to apply to wrongful death claims in addition to personal injury claims, it would have so stated in the statutory language." Def.'s Sur-Reply at 2.

The "purpose of Congress is the ultimate touchstone in every preemption case." Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008) (citations omitted). It is well-settled that "federal preemption of state law is not favored." Witco Corp. v. Beekhuis, 38 F.3d 682, 687 (3d Cir. 1994). "This is particularly true in areas of law traditionally dominated by the individual states." Id. Thus, "[w]here the field which Congress is said to have pre-empted includes areas that have been traditionally occupied by the States, congressional intent to supersede state laws must be 'clear and manifest.'" English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990) (internal quotations and citations omitted). Nevertheless, the New Jersey Supreme Court has explicitly recognized that "CERCLA now pre-empts state statutes of limitation where they provide that the limitations period for personal-injury or property-damage suits prompted by exposure to hazardous substances starts on a date earlier than the [FRCD]." Ayers v. Jackson Twp., 106 N.J. 557, 582 (1987).

A nearly identical argument as that advanced by BMS was presented to and rejected by the Second Circuit in Freier v. Westinghouse Elec. Corp., 303 F.3d 176, 198-99 (2d Cir. 2002). The plaintiffs in Freier suffered from various cancers caused by exposure to toxic wastes deposited at a landfill owned and operated by the defendants. Id. at 183. Their complaints asserted survival, wrongful death, personal injury, and loss-of-consortium claims under New York State law. Id. The defendants moved for partial summary judgment claiming, inter alia, that the plaintiffs' wrongful death claims were time-barred by New York's two-year statute of limitations because they were commenced more than two years after the deaths of plaintiffs' decedents.[4] Id. at 185. The district court denied the defendants' motion and the Second Circuit affirmed.

The Second Circuit began by examining the legislative history of the 1986 Superfund Amendments to CERCLA (which included § 9658). Section 301 of the Superfund Amendments required Congress to obtain a study of "the adequacy of existing common law and statutory remedies in providing legal redress for *harm to man* and the environment caused by the release of hazardous substances into the environment." 42 U.S.C. §9651(e)(1) (emphasis added). "After reviewing the commissioned study, congressional committees noted that the report, prepared 'by a distinguished panel of lawyers,' concluded that because of the accrual dates selected by state law, 'certain State statutes deprive plaintiffs of their day in court.'" Freier, 303 F.3d at 199.[5] "Thus, Congress's focus was on hazardous wastes' 'harm to man,' 42 U.S.C. § 9651(e)(1), and its

---

[4] Like New Jersey, New York law provides a two-year limitations period for wrongful death claims, which begins to run on the date of the decedent's death. Freier, 303 F.3d at 183 (citing N.Y.E.P.T.L. § 5–4.1 (McKinney 1999)).

[5] (citing H.R. Conf. Rep. No. 99–962 (1986) ("FRCD Conf. Rep."), at 261, *reprinted in* 1986 U.S.C.C.A.N. 3276, 3354; Report of the House of Representatives Committee on Energy and Commerce, H.Rep. No. 99–253(I) (1985) ("FRCD House Rep."), at 105, *reprinted in* 1986 U.S.C.C.A.N. 2835, 2887)

intent was to make the FRCD applicable to claims for 'harm which results from exposure to a hazardous substance,'" Id. (citing FRCD Conf. Rep. at 261, *reprinted in* 1986 U.S.C.C.A.N. at 3354). "Given this background," the Second Circuit concluded, "we see no valid basis for inferring that Congress meant § 9658 to distinguish between an action for wrongful death, as maintainable under New York law, and an action brought by a living victim." Id.

The Freier court also recognized that, "[i]ndisputably, the claim by a living victim for future earnings lost as a result of the injuries he suffered from exposure to hazardous wastes is one 'for personal injury' within the meaning of § 9658(a)(1)." Id. at 200. However, "under defendants' proposed interpretation of the FRCD, wrongful death claims by the decedent's distributees for relief paralleling that which would have been available to the victim had he lived, [including lost earnings], would not be within the scope of § 9658." Id. In other words, defendants would be financially better off if their victims died than if they survived. Id. According to the Second Circuit, "this was not the intent of Congress." Id.

BMS believes Freier was wrongly decided. Specifically, BMS contends that the Second Circuit's preemption analysis did not comport with the Supreme Court's direction in more recent cases such as Altria Grp., 555 U.S. at 77 (when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily "accept the reading that disfavors pre-emption"), and Wyeth v. Levine, 555 U.S. 555, 571 (2009) (requiring "clear evidence" of inability to comply with both state and federal law before finding preemption).

In support of their position, BMS cites a case from the Florida District Court of Appeal, Lee, 958 So. 2d 578 (Fla. Dist. Ct. App. 2007).[6] After a comprehensive and reasoned discussion, the Lee court held that the "long-standing distinction between personal injury claims and

---

[6] Lee appears to be the only other court to address the issue presented in Freier and here.

wrongful death claims compellingly points to a narrower meaning." Lee, 958 So. 2d at 582. Thus, it went on, "[i]f the Congress intended to adopt a policy of providing the same protection for wrongful death claims as for personal injury claims, the addition of two words—'wrongful death'—to the statute would have been sufficient to make that purpose 'clear and manifest.'" Id. at 583 (citation omitted).

The Court finds BMS's position unpersuasive. That is to say, the Freier court's cogent analysis was consistent with longstanding Supreme Court principles. While preemption jurisprudence will undoubtedly continue to evolve, nothing in either Altria Grp. or Wyeth v. Levine seem to have worked a sea change on its core principles. And while the Court acknowledges the Florida court's decision in Lee, it finds it less persuasive than that of the Second Circuit. Cf. Waldburger v. CTS Corp., 723 F.3d 434 (4th Cir. 2013) ("Such an interpretation [of § 9658] may seem to be textually sound under one possible reading of the statute, but it offers too narrow an approach and one that thwarts Congress's unmistakable goal of removing barriers to relief from toxic wreckage."). The Court, therefore, concludes that wrongful death actions in New Jersey are subsumed within Section 9658's "personal injury" claims.

### b.     *Section 9658's Remaining Elements*

BMS further claims that there are "no allegations in the FAMC of a 'release' from a 'facility' that resulted in 'response costs,' as defined by CERCLA." Def.'s Supp. Br. at 7. Thus, according to BMS, "CERCLA has no application where BMS has been voluntarily remediating environmental contamination on an *existing* site with *ongoing* operations that are subject to the oversight of the New Jersey Department of Environmental Protection." Def.'s Sur-Reply at 1; see also Def.'s Supp. Br. at 7. The Court disagrees.

To be sure, "§ 9658 operates only where the conditions for CERCLA cleanup are satisfied." Barnes ex rel. Estate of Barnes v. Koppers, Inc., 534 F.3d 357, 365 (5th Cir. 2008). In other words, the plaintiff "must prove that her claims arose from a 'release' of 'hazardous substances' into the 'environment,' as well as other case-specific preconditions establishing that the defendant's 'facility' falls within CERCLA." Id. (Although the Third Circuit has yet to address this precise issue, the Barnes holding is consistent with at least that of the Ninth Circuit. See O'Connor, 311 F.3d at 1149.) Section 9658, however, carries with it no requirement that there actually be an underlying CERCLA claim. E.g., O'Connor, 311 F.3d at 1149-50.

Here, Plaintiffs have pled sufficient facts under Twombly and Iqbal to plausibly suggest CERCLA's application. The first element is established as discussed above. Plaintiffs have established the second element—"hazardous substances"—through Plaintiffs' allegations of injuries by numerous chemicals and contaminants.[7] See, e.g., FAMC at ¶¶ 31, 128, 176. The third element—"released"—is established through Plaintiffs' allegations of the discharges and emissions of liquid, gaseous and solid chemicals and contaminants from the BMS Site.[8] See, e.g., FAMC at ¶¶ 18, 34, 64, 81-84. The fourth element—"into the environment"— is established through Plaintiffs' allegations of the discharges and emissions of chemicals and contaminants into the air, water and soil.[9] See, e.g., FAMC at ¶¶ 18, 21, 33, 34, 48. The fifth element—"facility"—is established through Plaintiffs' allegations of BMS's operation of the BMS Site.[10] See, e.g., FAMC at ¶¶ 12-21. Finally, the sixth element is established as discussed below.[11] The Court need not engage in a more detailed analysis of the CERCLA claims at this stage. Should

---

[7] See 42 U.S.C. §9601(14).
[8] See 42 U.S.C. §9601(22).
[9] See 42 U.S.C. §9601(8).
[10] See 42 U.S.C. §9601(9).
[11] The Court also notes that BMS continues to voluntarily remediate the site. Moreover, it appears the BMS Site at issue was previously designated a CERCLA site in prior litigation.

BMS wish to further challenge these claims, it is certainly free to do so by way of a summary judgment motion.

**c.**       *The FRCD and New Jersey WDA*[12]

State law is preempted when the FRCD would provide a more generous limitations period than that which would be available under state law. 42 U.S.C § 9658(a)(1). The FRCD is defined as "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." 42 U.S.C § 9658(b)(4)(A). The FRCD preempts state law accrual rules, then, if "under those rules, accrual would occur earlier than the date on which the cause of the personal injury was, or reasonably should have been, known to be the hazardous substance." Freier, 303 F.3d at 196 (collecting cases).

In New Jersey, the FRCD provides a more generous accrual date for wrongful death claims than state law. The FRCD begins to accrue on the date the plaintiff knew (or reasonably should have known) that the injury was caused by the hazardous substance or pollutant concerned. 42 U.S.C § 9658(b)(4)(A). The FRCD thus provides for an accrual date based on its own version of the discovery rule. The New Jersey WDA, by contrast, provides for a two year limitations period which begins to accrue on the date of a *fixed objective event*—the date of death. N.J.S.A. § 2A:31-3. And, most germane to the issue at hand, "the discovery rule does not apply to toll the statute of limitations provision under [New Jersey's] Wrongful Death Act." Fuqua, 2013 WL 781615, at *5 (reaching conclusion after comprehensive analysis of New Jersey law).

---

[12] Although the Parties neither raise nor dispute this issue, the Court nonetheless makes several brief observations.

d.    *Conclusion*

Given the above, this Court holds that the date of accrual under the New Jersey WDA is preempted by CERCLA. See Freier, 303 F.3d at 197 ("We conclude that these principles require rejection of defendants' contention that § 9658 does not encompass . . .  wrongful death claims, for we find that . . .  in light of the statutory scheme as a whole, it was meant to encompass [such claims]").

3.    **Effects of Preemption: The FRCD**

Turning to the facts of the instant case, the accrual of Plaintiffs' WDA claims was tolled until Plaintiffs knew (or reasonably should have known) that BMS's alleged conduct caused their deaths. BMS argues that even if CERCLA is applicable, Plaintiffs have still not plead sufficient facts to assert the discovery rule and survive a motion to dismiss. The Court disagrees.

An analogous argument (albeit not in the context of wrongful death claims) was recently addressed in Clark v. Prudential Ins. Co. of Am., 736 F. Supp. 2d 902 (D.N.J. 2010). In Clark, the defendants moved to dismiss the class plaintiffs' claims under California's Unfair Competition Law ("UCL") for, inter alia, statute of limitations reasons. Id. at 923. The defendants claimed that the plaintiffs failed to plead sufficient facts to invoke the discovery rule.[13] Id. In support of this position, the defendants argued that the plaintiffs were required to show: (1) the time and manner of discovery; and (2) an inability to have made earlier discovery despite reasonable diligence. Id. The court summarily rejected the defendants' first argument:

---

[13] Class plaintiffs in Clark were consumers who asserted claims against a health insurer, alleging fraudulent misrepresentation, fraudulent omissions, breach of duty of good faith and fair dealing, violation of California's UCL, and violation of New Jersey Consumer Fraud Act arising out of closing of block for insurance. Although the Clark court applied the heightened pleading standard with respect to the fraud claims, it did not apply the heightened standard to the plaintiffs' UCL claims.

The Court disagrees that Clark was required to plead facts relating to the time and manner in which she discovered the facts constituting her claim. A statute of limitations defense is affirmative. FED. R. CIV. P. 8(c). Therefore, it may only be resolved on a motion to dismiss if it is clear from the face of the complaint that the statute of limitations bars the claim. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n. 1 (3d Cir.1994). There is no requirement that a plaintiff affirmatively plead facts in the complaint showing that the statute of limitations has not run.

Id.

Next, the Clark court cited a single paragraph of the plaintiffs' complaint for the proposition that the named plaintiff had pled sufficient facts to support the inference that she had exercised reasonable diligence in discovering the cause of her injury. Id. at 923-24. Plaintiffs' complaint, therefore, "allege[d] sufficient factual information to show that Ms. Clark may be able to apply the delayed discovery rule to her claim; whether the delayed discovery rule will shelter her claim will involve a subsequent factual determination." Id. at 924.

Like in Clark, Plaintiffs' here are not required to plead the time and manner of discovery. Instead, it is enough that the facts in the FAMC give rise to an inference that Plaintiffs were reasonably diligent in discovering the fact that BMS allegedly caused their injuries. They do. For instance, Plaintiffs' FAMC states the following:

217.   BMS has, at all times, had a legal obligation to disclose to officials and agencies, to the public in general and to the Plaintiffs in particular the true extent of contamination at and emanating from the Site in connection with agency action, in connection with probable future litigation and in order to facilitate medical monitoring.   BMS failed and refused to disclose the true extent of contamination at and emanating from the Site.   The public in general and Plaintiffs in particular were the intended beneficiaries of the laws and regulations applied and enforced by the aforesaid authorities and agencies, empowered to investigate and empowered to remediate or order to be remediated, the material facts concerning the nature, extent, magnitude and effects of the contamination at and emanating from the Site, and intended thereby to defraud the said officials and agencies, the public in general and the Plaintiffs in particular.

* * *

219.    Since the beginning of toxic contamination at and emanating from the Site, BMS has had actual knowledge that that contamination presented a significant risk of harm to the health of the public in general, the neighborhood and the Plaintiffs in particular. Notwithstanding this knowledge and in disregard thereof, BMS misstated, withheld and concealed and continues to misstate, withhold and conceal material information from said agencies, authorities, the public and Plaintiffs concerning the nature, extent, magnitude, and effects of the exposure and contamination at and emanating from the Site. Neither the said officials and agencies, the public in general or the Plaintiffs in particular could have reasonably obtained access to this information form any other source.

* * *

234.    BMS's past and continued misrepresentations and knowing omissions caused Plaintiffs to hesitate or fail to: seek treatment of their actual or potential medical conditions; take steps to protect themselves from harm to their health, property and loved ones; know of their injuries in connection with BMS acts and omissions; or properly protect their rights under the law.

Accepting these facts as true, the FAMC contains sufficient factual content to allow the court to draw the "reasonable inference," Iqbal, 556 U.S. at 678, that Plaintiffs were diligent in attempting to discover the cause of their injuries. This is not the rare case, then, "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994). Accordingly, Plaintiffs' Motion for Leave to Amend is **GRANTED** with respect to their wrongful death claims.

An appropriate Order follows.


Dated: September 25, 2013.                    **s/ Douglas E. Arpert**
                                              **DOUGLAS E. ARPERT, U.S.M.J.**